UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

- vs -

GREGORY ALBERT BOBCHICK,

Defendant.

_____/

CRIMINAL NO.  25-20770

Hon. Matthew F. Leitman

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Defendant Gregory Albert Bobchick is a local entrepreneur who has owned and operated businesses ranging from machining shops to pizza restaurants over the course of a long career. Between 2016 and 2019, Bobchick operated a business in Fraser, Michigan, which provided machining services to various manufacturers. Bobchick's largest customer during this time frame was a company that manufactured Styrofoam cups. This company provided regular payments to Bobchick's business for machining services Bobchick provided, with the payments typically being provided by check.

Rather than deposit these checks in his business account, Bobchick elected to cash most of them at a local money-servicing business. Bobchick incurred

1

exorbitant check-cashing fees by engaging in this practice. However, cashing his checks this way did have the benefit of facilitating Bobchick's multi-year scheme to evade federal income taxes. Bobchick intentionally did not provide his tax preparer with receipts or records regarding the customer checks he cashed at the money servicing business. He was therefore able to avoid paying taxes on a large portion of his income. During the relevant tax years, the IRS conservatively estimates that Bobchick avoided reporting over $1.2 million in taxable income, which enabled him to pocket approximately $340,000 in money that should have been paid in taxes.

Bobchick timely entered a guilty plea in this case and has been cooperative throughout the investigation and prosecution of this matter. His criminal record is dated, and he has generally lived a law-abiding life throughout his adulthood. His conduct in this case, however, was unquestionably problematic and warrants a significant sanction from the Court. The government submits that a sentence of one year and one day imprisonment, at the low end of the applicable sentencing guideline range, is appropriate for this offender.

FACTUAL AND PROCEDURAL BACKGROUND

Bobchick was born in Warren in 1964, the son of a car hauler and a teacher. Bobchick's childhood was happy and stable, and he reports no history of abuse or

2

neglect.  As a teenager and young man, Bobchick was a highly talented wrestler, and attended Michigan State University on a wrestling scholarship. He did not graduate from Michigan State and in fact never obtained a college degree. However, upon leaving college, he was sufficiently skilled at wrestling to pursue that activity professionally, both in the United States and overseas.

In the early 1990s, Bobchick unfortunately became involved in the distribution of anabolic steroids and other controlled substances. He served a year in jail on a federal narcotics conviction in 1993. In 1994, he picked up a state conviction in Macomb County for distributing cocaine. Between his 1995 state conviction and the current tax offense, Bobchick's only encounter with the criminal justice system was a 2007 drunk-driving charge, to which he pled guilty and received a fine.

After leaving federal custody in the mid-1990s, Bobchick became involved in owning and operating several businesses, both in Michigan and elsewhere. Bobchick owned a series of Jet's Pizza franchises in Michigan, Florida, and Tennessee. He also formed a machining shop, dubbed "3D Machining," in Fraser in approximately 2000.  Bobchick's ownership of this last business was the source of the instant offense, which is described below.

Bobchick organized 3D as an "S-Corporation" under the Internal Revenue

Code.  S-Corporations are "pass through entities," meaning that they generally do not pay federal corporate income taxes. Rather, income from the business flows through to shareholders and is reported on the shareholders' individual tax returns, where it can be taxed at individual rates.  Bobchick was the sole shareholder in 3D. For tax years 2017, 2018, and 2019, Bobchick caused 3D to file S-Corporation corporate tax returns. He also filed his own individual tax returns for those tax years, in which he purported to capture all income from the business.

In fact, the information reported on both 3D's corporate tax returns and Bobchick's individual tax returns for those three years was false. Customers of 3D generally paid 3D for its services via check. This included 3D's largest customer, a manufacturer of Styrofoam cups, referred to herein as Company A.  Bobchick took a substantial number of Company A's checks to a money servicing business, where he cashed the checks in exchange for a hefty fee. Bobchick provided his tax preparer with 3D's bank statements, which the preparer used (among other things) to assemble the corporate tax returns for 3D and Bobchick's personal tax returns. Bobchick, however, did not provide his tax preparer with any information regarding the checks from Company A that he negotiated at the money service business.  Bobchick did deposit some of the cash he received after cashing Company A's checks into 3D's account, where it was captured by the tax preparer

4

and included as income on the relevant tax returns. However, the bulk of the cash he obtained from Company A's checks was never deposited into 3D's account, and therefore, those monies were not included as gross receipts in 3D's corporate tax returns. The understated income flowed through to Bobchick's personal tax returns.

Bobchick cashed hundreds of checks from Company A at the money service business between 2017-2019.  Over the course of these three years, this practice led to Bobchick understating approximately $1,269,616 in taxable income on his personal tax returns. As charged in the Information, a portion of this total, approximately $418,401 in taxable income, was not included on Bobchick's 2019 individual return.  Bobchick subscribed each of his individual tax returns for years 2017-2019 by signing them, and each tax return contained a written declaration that it was made under penalty of perjury. Bobchick knew at the time that he signed these tax returns that they were false, in that they substantially understated his taxable income. Moreover, Bobchick signed each of his knowingly false returns willfully, knowing that by doing so he was violating the law.  Bobchick's criminal conduct resulted in a tax loss of approximately $343,334 to the United States government.

Following an investigation by the IRS-Criminal Investigations Branch, Mr.

Bobchick retained counsel. The government and Mr. Bobchick's counsel were able to negotiate a pre-indictment resolution to the case. Bobchick was charged via Information on October 9, 2025, with a single count of False Statement on an Income Tax Return, in violation of 26 U.S.C. Section 7206(1). He pleaded guilty to that charge the following month and now awaits sentencing.

<u>SENTENCING FACTORS – 18 U.S.C. § 3553(a)</u>

Section 3553(a) of Title 18 of the United States Code sets forth a number of factors for the Court to consider in imposing sentence. Those factors include the nature and circumstances of the offense, the history and characteristics of the offender, considerations of both specific and general deterrence, and the need to provide just punishment for the offense and promote respect for the rule of law. The government respectfully submits the following observations on those factors and their applicability to the conduct and defendant in the instant case.

The nature and circumstances of the offenses in this case are serious. Bobchick engaged in a simple but substantial scheme to defeat the IRS's ability to collect taxes that he properly owed. Bobchick negotiated over $1.2 million in checks at a check-cashing store and avoided reporting any of that income on his corporate or personal tax returns. This was not an impulsive act or a one-time lapse

in judgment —Bobchick cashed hundreds of checks over a three-year period in this fashion. Willfully refusing to pay tax due and owing is a serious offense under most circumstances. Doing so to the tune of over $340,000 is no small matter. The Court should take into account the scale of Bobchick's misconduct, as well as the willfulness it entailed, in fashioning a sentence in this case.

The defense has suggested in its sentencing memorandum that Bobchick's use of the money servicing business to cash Company A's checks was borne out of short-term cash flow needs and reflected a desperate response to business imperatives. *See* ECF 17, *Defendant's Sentencing Memorandum*, at 4-5.  The argument appears to be that dire financial straits drove Bobchick to cash company A's checks at the money servicing business, which ultimately provides an explanation (though not excuse) for his inability to manage his tax compliance obligations.

This assertion is puzzling to the government. Bobchick had a checking account for 3D, and he regularly used that account in the course of 3D's normal business operations. He could have cashed checks from 3D's customers at that financial institution and presumably obtained the cash without paying any fee, let alone the exorbitant fee charged by the check-cashing store. It seems to the government that the much more likely explanation for Bobchick's practice of

cashing Company A's checks was his <u>intent</u> to evade taxes, as opposed to some need for quick cash that could only be met by paying outrageous check-cashing charges at a money-servicing business.

The history and characteristics of the offender present a mixed picture here. Bobchick encountered some turbulence with the criminal justice system in his early adulthood but has largely stayed out of trouble since that time.  It is troubling to the government that Mr. Bobchick willfully engaged in criminal conduct despite having experienced the consequences of criminal behavior as a young man. However, it should be noted that most of Bobchick's adult life has been free of criminality. He has supported his family throughout his marriage and enjoys the support of his wife, family, and parishioners at the church he attended.

While the government disputes the defense's explanation of the rationale for Bobchick's use of the money servicing business as part of the offense, it does not dispute that Bobchick had financial difficulties that may have played a role in motivating the crime.  A desire to keep one's head above water is not an excuse for criminal behavior, but it is less aggravating of a motive than pure greed. Bobchick's motives are ultimately known only to him, but the government sees it as plausible that this offense involved more of the former than the latter.

With respect to deterrence, the government submits that there is some need for general deterrence in this case. There is unquestionably a need to deter other potential wrongdoers with respect to tax offenses – federal income tax avoidance is a significant problem with real costs for the public. According to the IRS, between 2014-2016 approximately 15% of taxes due and owing to the federal government went unpaid. This resulted in an estimated shortfall of some $428 billion annually. *See IRS Publication 1415*, *Federal Tax Compliance research – Tax Gap Estimates for Tax Years 2014-2016* (published August 2022). Intentional underreporting of income contributes to a significant fiscal problem for the United States in the area of tax compliance, and an appropriate sentence here would hopefully deter other unscrupulous individuals contemplating engaging in such tax avoidance.

Bobchick does not strike the government as especially likely to re-offend, making specific deterrence less of a relevant concern here. Bobchick now has a substantial restitution obligation on top of the consequences of his criminal conviction, and he is likely nearing the end of his career. His opportunity to engage in further tax crimes is likely to be limited.

The government also submits that a sentence in line with its recommendation is consistent with the need for the sentence imposed to promote respect for the rule of law and provide just punishment for the offense. Corporate

tax revenue, whether taxed as corporate income or passed-through to individual income tax returns, is a significant source of revenue for the United States government. The IRS has the personnel and the capacity to audit only a tiny percentage of tax returns. To function effectively, the revenue system relies on the integrity of individual and organizational taxpayers. Criminal tax evasion undermines the integrity of this system, deprives the federal government of funds needed for the provision of critical public services, and breeds distrust of public institutions. The tax loss associated with Bobchick's criminal conduct is obviously small in the context of the federal budget; however, the impact of such crimes in the aggregate is substantial. Tax crimes erode the public's confidence in the fairness of the tax system, and a sentence in line with the government's recommendation would promote respect for the law and provide an appropriate sanction for the defendant's misconduct.

CONCLUSION

In conclusion, the government respectfully requests that the Court impose a sentence of one year and one day of incarceration for this defendant, a sentence at the low end of the applicable guideline range. The government submits that such a sentence would appropriately reflect the seriousness of the offense, take into

account the defendant's history and characteristics, deter other offenders from

engaging in this sort of criminal conduct, and promote respect for the rule of law.

Respectfully Submitted,
JEROME F. GORGON, JR.
UNITED STATES ATTORNEY

*/s/ John K. Neal*
JOHN K. NEAL
Assistant United States Attorney
Chief, Anti-Corruption Unit
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9644
John.neal@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2026  I caused a copy of this filing to be

served on all counsel of record using the court's electronic filing system.

*/s/ John K. Neal*

11